IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket Nos. 42962 & 42963

| STATE OF IDAHO, | ) | 2016 Unpublished Opinion No. 473 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 11, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DANA LYDELL SMITH, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Minidoka County. Hon. Randy J. Stoker, District Judge.

Order denying I.C.R. 35 motion to correct an illegal sentence, <u>affirmed</u>; order denying motion for new trial, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, LLP; Dennis Benjamin, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge Pro Tem

In these consolidated cases, Dana Lydell Smith appeals from the district court's orders denying Smith's I.C.R. 35 motion for correction of an illegal sentence and his motion for a new trial. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

In March 2007, Smith was found guilty by a jury of grand theft and was sentenced to a unified term of fourteen years, with a determinate term of seven years. This Court affirmed Smith's judgment of conviction and sentence in an unpublished opinion. *State v. Smith*, Docket Nos. 35216 and 35604 (Ct. App. May 20, 2009). In 2015, Smith filed a motion for correction of an illegal sentence pursuant to I.C.R. 35 and a request for appointment of counsel. Smith also

filed a motion for a new trial. In both motions, Smith claimed his conviction and sentence were illegal because the district court did not order a mental health evaluation to ensure Smith was competent. The district court denied Smith's motions, holding that they were untimely. Smith appeals.

## II.

## ANALYSIS

### A.    Rule 35

In Docket No. 42962, Smith appeals from the district court's order denying his Rule 35 motion for correction of an illegal sentence. The parties dispute whether subsection (a) or (b) of Rule 35 applies to Smith's claim. Smith asserts that his sentence was illegal and may be corrected under Rule 35(a), which provides that the district court may correct an illegal sentence at any time. The state, on the other hand, alleges that Smith's claim is an untimely attack on the manner in which the sentence was imposed. The state asserts that the motion is governed by Rule 35(b), which provides that a motion to adjust or modify a sentence imposed in an illegal manner must be made within 120 days of the entry of judgment. We need not resolve this dispute for, even assuming that Smith's challenge is governed under Rule 35(a) and was therefore timely, it fails on the merits.

Whether a sentence is illegal is a question of law freely reviewable by the appellate court. *State v. Josephson*, 124 Idaho 286, 287, 858 P.2d 825, 826 (Ct. App. 1993); *State v. Rodriguez*, 119 Idaho 895, 897, 811 P.2d 505, 507 (Ct. App. 1991). An "illegal sentence" under Rule 35(a) is a sentence that is illegal from the face of the record; i.e., does not involve significant questions of fact nor require an evidentiary hearing to determine its illegality. *State v. Clements*, 148 Idaho 82, 87, 218 P.3d 1143, 1148 (2009). Thus, Rule 35(a) may be used only to resolve legal questions surrounding the defendant's sentence and not to resolve factual issues. *Id*. at 88, 218 P.3d at 1149.

While incarcerated prior to trial, Smith was evaluated by a number of mental health clinicians. Several reports mention post-traumatic stress disorder (PTSD) stemming from

Smith's military service.[1]   As a result, Smith suffered from nightmares.  In addition, some reports say that Smith suffered from chronic mild paranoia and hallucinations.  One clinician attributed Smith's paranoia and hallucinations to his use of illegal drugs, including methamphetamine.  The clinician concluded that no treatment for Smith was necessary at the time he was examined and that the clinician expected Smith's paranoia to subside after a "few weeks."  On the other hand, a different report stated that Smith appeared to be in a "hypomanic state of bipolar."

The district court ordered a mental health examination of Smith.  The clinician reported that Smith had an adjustment disorder with anxiety and a personality disorder with antisocial and narcissistic traits.  Ultimately, the clinician reported that, "I believe [Smith's] mental health prognosis is good as I do not believe he has a major mental illness," and suggested no treatment plan for Smith.

In 2005, a psychologist evaluated Smith's competence to proceed to trial.  The psychologist concluded that Smith had the "*ability* to have a rational and factual understanding of the proceedings against [him] and of the punishment specified for the offenses charged."  However, the psychologist also concluded that Smith had the "*inability* to adequately consult with his counsel or to participate in the proceedings against him with a reasonable degree of rational understanding."  The psychologist indicated that Smith "may not have the ability to proceed through the court process."  The psychologist explained that Smith understood the nature of the proceedings against him and comprehended the range and nature of possible penalties, but the psychologist questioned whether Smith could manifest appropriate courtroom behavior based upon his "history of disruptive behavior in the courtroom."  The psychologist was also concerned that Smith "may not testify relevantly given his preoccupation with legal facts and apparent delusional themes."  The psychologist suggested that Smith would benefit from an antipsychotic medication.

[1]   Smith claimed to several clinicians that he suffered PTSD as a result of being shot in the shoulder while serving in Panama.  However, one report stated that Smith was discharged shortly after entering the military, as a result of a shoulder injury during basic training and that there was no basis for Smith's claimed PTSD.

A second psychologist examined Smith and concluded that his intellectual functioning was in the "average range" and that he did not have any type of mental defect. The psychologist acknowledged that Smith claimed to have been diagnosed with bipolar disorder, which the psychologist could not confirm. She noted that a diagnosis of bipolar disorder alone would not necessarily make Smith incompetent to proceed to trial. The psychologist suggested that Smith's history of substance abuse, in combination with his "longstanding antisocial personality disorder and prominent narcissistic personality traits," were the cause of Smith's angry, irritable, grandiose, and paranoid behavior. The psychologist explained Smith's inability to assist in his defense and concluded:

> Aspects of [Smith's] personality disorder . . . make him believe that he is always right, that he is smarter than everyone around him, that he is special and unique, that he should not have to abide by the rules of society like other people, that he should be entitled to special treatment, and that he is very willing to exploit other people to achieve his own goals, make him extremely difficult to treat in therapy or any type of clinical setting. These same personality characteristics are also currently making it very difficult for his Attorney to interact productively with [Smith]. [Smith] appears to enjoy trying to impress others with his intellect and his own knowledge of the law and he tends to try to intimidate others by shouting them down or talking very rapidly and not giving anyone an opportunity to talk.

In May 2007, a third psychologist reviewed the various reports described above, reviewed Smith's medical records, and interviewed him for the purpose of providing a comprehensive psychological evaluation. The psychologist diagnosed Smith with bipolar disorder and antisocial personality disorder with borderline and histrionic traits. The psychologist explained that Smith had the capacity to understand the proceedings against him, including the court process and the consequences he was facing. The psychologist explained:

> [Smith's] ability to assist in his own defense presents a question, however. He can and does ramble off rather inappropriately, both in terms of content and style intermittently. In my view that likely seriously impairs his ability to work systematically with his attorney in a sustained fashion. That is, there are brief periods in which he gets off target, is fairly irrational, bizarre, and grandiose. In those regards, it is my opinion that he cannot effectively and systematically work with his defense attorney in a sustained fashion.
> . . . .
> [Smith] can in all likelihood be treated safely on an outpatient basis and should resume medications to stabilize his mood. That being the case, once those

4

medications would become effective then he could in all likelihood proceed with the matters in court that he is currently facing.

Based upon this May 2007 report, Smith contends that he was not competent when he was sentenced more than two and one-half years later. That is, Smith asserts that his sentence is illegal because it was imposed after he was found incompetent and without Smith having been reevaluated to determine whether he had gained competence.

Contrary to Smith's assertion, it is not clear from the face of the record that he was incompetent at the time of his sentencing. As explained by all who examined him, Smith understood the nature of the charges against him and the potential sentences he faced. It appears he also had the ability to understand the potential defenses proposed by his counsel. Although several examiners reported that they did not believe Smith was capable of participating in his own defense, the undertone of each examiner's finding was that Smith has a personality disorder (rather than a serious mental illness) that made him unwilling to accept expert advice and that Smith shouted and talked loudly over others instead of listening to advice. The final psychologist, whose report Smith relies upon as proof that he was incompetent, opined that if Smith were given medication to treat his disorder, he likely would become competent to proceed. This psychologist's recommendation, taken in context, was that Smith be medicated to stabilize his *mood* in order for him to be able to cooperate with his counsel. After that evaluation occurred, at a hearing Smith's counsel reported to the district court that Smith was taking the prescribed medication, and counsel asked that the matter be set for trial. These circumstances raise an inference that the medication did, indeed, improve Smith's mental state such that he was able to assist with his defense and cooperate with counsel.

This record suggests that Smith had personality disorder, not a serious mental illness, and does not establish that he was incompetent at the time of his sentencing hearing, which occurred more than two and one-half years after the May 2007 evaluation. Rather, whether Smith was incompetent at that time is, at best, an unresolved factual issue that may not be resolved on a Rule 35(a) motion. It follows that Smith's sentence is not "illegal from the face of the record," *see Clements*, 148 Idaho at 86, 218 P.3d at 1147, and the district court did not err in denying Smith's Rule 35 motion.

**B.     Motion for Appointment of Counsel**

Smith alleges that the district court erred in failing to rule on his request for appointment of counsel before addressing his Rule 35 motion. A criminal defendant has a right to counsel at all critical stages of the criminal process, including pursuit of a Rule 35 motion. I.C. § 19-852(2)(c); *Murray v. State*, 121 Idaho 918, 923 n.3, 828 P.2d 1323, 1328 n.3 (Ct. App. 1992). However, the court may deny appointment of counsel if it finds the motion is not a proceeding that a reasonable person with adequate means would be willing to bring at his or her own expense and is therefore a frivolous proceeding. I.C. § 19-852(2)(c). Thus, a defendant may be denied appointment of counsel to assist in pursuing a Rule 35 motion if the trial court finds the motion to be frivolous. When a court is presented with a request for appointment of counsel, the court must address that request before rendering a ruling on the substantive issues in the underlying case. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004).

In this case, the district court did not rule on Smith's request for appointment of counsel before ruling on the substantive issues in Smith's Rule 35 motion. Accordingly, the district court erred. However, error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.*

A court's failure to act on a motion for appointed counsel constitutes reversible error only if the movant has presented a "colorably meritorious claim," the presentation of which might have been improved by the assistance of counsel. *Swisher v. State*, 129 Idaho 467, 469, 926 P.2d 1314, 1316 (Ct. App. 1996) (holding that failure to address request for counsel on claims unquestionably barred by the statute of limitation was harmless error). Here, the record does not show on its face that Smith's sentence was illegal. Appointment of counsel would not have changed the content of that record. Thus, the district court's error in failing to act on Smith's request for appointment of counsel before addressing his Rule 35 motion was harmless.

**C.     New Trial**

In Docket No. 42963, Smith filed an appeal from the district court's order denying his motion for a new trial, but he has raised no issue on appeal asserting error in the order. Accordingly, any claim of error is waived.

### III.

### CONCLUSION

Smith has not shown his sentence is illegal.  He has shown that the district court erred in addressing the merits of his Rule 35 motion without first addressing his request for appointment of counsel, but this error was harmless.  Therefore, the district court's order denying Smith's motion for correction of an illegal sentence and motion for a new trial are affirmed.

Judge GUTIERREZ and Judge GRATTON, **CONCUR**.